IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:05CR81 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| WAYNE EVAN KOOISTRA, | ) | |
| | ) | |
| Defendant. | ) | |

  This matter is before the court on the motion to dismiss filed by defendant Wayne Evan Kooistra (Kooistra) (Filing No. 35). The federal grand jury returned an indictment against Kooistra on February 24, 2005, wherein it is alleged that Kooistra perpetrated a bank fraud from June 1, 2001, to on or about September 18, 2001, in violation of 18 U.S.C. § 1344 (Count 1). The grand jury further alleged Kooistra made false statements to the Farm Credit Administration on March 22, 2001 (Counts II and III) and on July 16, 2001 (Count IV) in violation of 18 U.S.C. § 1014. An arrest warrant was issued on February 25, 2005, and Kooistra was arrested in the District of Minnesota on March 3, 2005 (Filing No. 17). Kooistra appeared before a United States Magistrate Judge in the District of Minnesota on March 4, 2005, and was temporarily detained pending a removal/detention hearing (Filing No. 8). On March 9, 2005, Kooistra again appeared in the District of Minnesota, waived removal to the District of Nebraska, and was released on conditions (Filing No. 11). Kooistra also waived extradition from Canada in the event he was allowed to return to his home in Canada during the pendency of these proceedings (Filing No. 13). Kooistra's initial appearance and arraignment were held before this court on March 16, 2005. Kooistra requested and was granted an extended time in which to review discovery and file pretrial motions (Filing No. 20). Kooistra requested additional extensions of the pretrial motion deadline which were granted (Filing Nos. 25, 31 and 34).

  Kooistra moved to dismiss the indictment on March 3, 2006 (Filing No. 35). Kooistra claims the indictment must be dismissed because the government's undue pre-indictment delay violated his Fifth Amendment due process rights. An evidentiary hearing on the motion to dismiss was held on April 5, 2006. At the hearing, the court heard the testimony

of Steven D. Davidson (Mr. Davidson) and Special Agent Steven T. Harker (Agent Harker) of the Federal Bureau of Investigation (FBI). The court also received into evidence the following exhibits: a civil complaint filed in the U.S. District Court for the Northern District of Iowa, Case No. CO2-4088 (Exhibit 101); a summons in civil Case No. CO2-4088 (Exhibit 102); a report by Robert L. Kirchner (Exhibit 103); a 2/20/03 deposition of Wayne Kooistra (Exhibit 104); a 10/7/03 decree in civil Case No. CO2-4088 (Exhibit 105); a 10/7/03 order of dismissal in civil Case No. CO2-4088 (Exhibit 106); and a 12/10/03 FBI report of interview of Robert L. Kirchner (Exhibit 107). An amended transcript of the hearing (TR.) was filed on April 17, 2006 (Filing No. 49).

## FINDINGS OF FACT

The Indictment alleges in Count I that Kooistra, doing business as the Circle K Cattle Company, engaged in a check-kiting scheme to defraud the Farm Credit Services of America (FCSA) in Omaha, Nebraska, and the American State Bank (ASB) in Sioux Center, Iowa, during the period of June 1, 2001, through September 18, 2001, in violation of 18 U.S.C. § 1344. The Indictment further alleges three counts of making material false statements in connection with a line of credit advance request to FSCA - Count II (March 22, 2001), Count III (March 22, 2001), and Count IV (July 16, 2001), all three counts in violation of 18 U.S.C. § 1014. The Indictment was filed in this matter on February 24, 2005.

Agent Harker testified that the FCSA notified the FBI of allegations of a check-kiting scheme by Kooistra in October 2001 (TR. 16). The FBI's active investigation began in the summer of 2003 (TR. 19). Agent Harker testified that following the September 11, 2001, attack on the World Trade Center, all FBI agent resources nationwide were redirected into counter-terrorism efforts until the first part of 2002 (TR. 20). All other criminal matters were set aside (TR. 20). Mr. Davidson of the Baird Holm law firm testified that FCSA discovered the Kooistra check-kiting scheme in the summer or fall of 2001 (TR. 12)  In November 2001, FSCA filed a civil action in the United States District Court for the Northern District of Iowa (USDC N.D. IA) against ASB for returning twenty-three payable-through drafts to FCSA which were drawn on the FCSA payable-through account at Wells Fargo Bank Nebraska. Mr. Davidson of the Baird Holm law firm in Omaha, counsel for FSCA in the civil

action, testified the lawsuit primarily involved issues relating to the timeliness of the return of payable-through drafts written on Kooistra's account at ASB which were intended to draw funds against Kooistra's line of credit at FCSA (TR. 4). The district court granted ASB's Rule 12 motion to dismiss for failure to state a claim, and FCSA appealed to the Eighth Circuit. On August 12, 2003, the Eighth Circuit upheld the district court's dismissal of the action. *FCSA v. ASB*, 339 F.3d 764 (8th Cir. 2003). Therein the Eighth Circuit noted: "Wayne Kooistra maintained accounts at both American and Farm Credit, through which he perpetrated an elaborate check-kiting scheme. Kooistra's use of his accounts resulted in the liability that is the subject of this litigation." *FCSA v. ASB*, 339 F.3d at 766. However, the actual check-kiting scheme was never litigated in this lawsuit (TR. 11). Mr. Davidson testified that while he knew the FCSA was providing information to the FBI, he was unaware of any contact with the FBI or the U.S. Attorney's office and Mr. Davidson's law firm until the criminal charges were filed in this matter (TR. 13-14).

On September 26, 2002, FCSA, through the Baird Holm law firm filed a civil collection action against Kooistra and his related businesses in the USDC N.D. IA, Case No. CO2-4088 (Exhibit 101; TR. 6). In preparation for that lawsuit, the Baird Holm law firm employed the services of a forensic accountant, Robert L. Kirchner (TR. 6-7). On May 22, 2003, Mr. Kirchner prepared a report and submitted it to the Baird Holm law firm tracing funds through various accounts used by Kooistra in the check-kiting scheme (Exhibit 103). On February 20, 2003, Kooistra's deposition was taken by the Bird Holm law firm in Case No. CO2-4088 (Exhibit 104). The deposition was lengthy, i.e., 153 pages, and covered numerous deposition exhibits, including bank checks. On October 7, 2003, the civil case in Case No. CO2-4088 was disposed of by various attachments, liens, and constructive trusts in a Decree agreed upon by the parties (Exhibit 105). The civil case in Case No. CO2-4088 was dismissed on October 7, 2003 (Exhibit 106).

Agent Harker testified the active investigation of the criminal charges involving Kooistra's check-kiting scheme began in the summer of 2003 (TR. 19). FBI Special Agent Ricky Lorensen was the original case agent on the case (TR. 16-17). Agent Lorensen interviewed the forensic accountant, Mr. Kirchner, on December 4, 2003 (Exhibit 107). Agent Lorensen retired from the FBI at the end of July 2005 (TR. 18). Agent Jonathan

Robitaille took over the investigation after Agent Lorensen retired (TR. 21). Numerous boxes of documents were amassed in the investigation of the case (TR. 22).

## LEGAL ANALYSIS

Kooistra claims the indictment against him must be dismissed because the government's pre-indictment delay prejudiced his right to due process guaranteed under the Fifth Amendment. Kooistra's Fifth Amendment claim for pre-indictment delay focuses on the time period between January 2002, when the FBI resumed normal criminal investigations after 9/11, and February 25, 2005, when Kooistra was indicted by a federal grand jury. Pre-indictment delay may warrant "dismissal of an indictment where the delay is unreasonable and the defendant is actually and substantially prejudiced in the presentation of [his] case." *United States v. Brockman*, 183 F.3d 891, 895 (8th Cir. 1999). The court generally considers the actual and substantial prejudice issue first *Brockman*, 183 F.3d at 895 (**citing** *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998)).

The defendant has the burden of proving actual and substantial prejudice attributable to pre-indictment delay. *Brockman*, 183 F.3d at 895 (**citing** *United States v. Lovasco*, 431 U.S. 783, 789-90 (1977)); *United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir. 1986). To meet this burden, the defendant cannot rely on speculative or conclusory claims of possible prejudice resulting from the passage of time. *United States v. McDougall*, 133 F.3d 1110, 1113 (8th Cir. 1998). The defendant must specifically identify witnesses or documents lost due to delay caused by the government, relate the substance of this missing evidence "in sufficient detail to permit a court to assess accurately whether the information is material to the accused's defense," and "show that the lost testimony or information is not available through another source." *Brockman*, 183 F.3d at 895 (**citing** *Bartlett*, 794 F.2d at 1289-90).

Kooistra's single assertion of prejudice, i.e., is that had he been indicted on the charges prior to giving the deposition in the civil proceeding in the USDC S.D. IA in Case No. CO2-4088, he would have asserted his Fifth Amendment privileges against self-incrimination rather than providing answers in a lengthy deposition on February 20, 2003.

Kooistra's assertion of prejudice is disingenuous.  Kooistra could have asserted his Fifth Amendment privilege at any time.  He did not have to await indictment by a federal grand jury.  Furthermore, Kooistra had to be aware as early as late 2001 that he had been implicated in an extensive check-kiting scheme.  Law suits were being filed, Kooistra was represented by counsel, and Kooistra's activities had come under scrutiny.  Thus, Kooistra's specific claim of prejudice is without merit.  Kooistra has presented no evidence that any material witness testimony or documents are unavailable for his defense due to any delay in the federal indictment.  He has therefore failed to prove any "actual and substantial prejudice" attributable to pre-indictment delay warranting dismissal of the indictment under the Fifth Amendment.  **Cf. *Brockman***, 183 F.3d at 895 (**holding** defendant failed to prove prejudice resulting from five-year pre-indictment delay even though four witnesses had died, because the same testimony was available through other witnesses).

The statute of limitations provides the primary guarantee against pre-indictment delay.  ***Brockman***, 183 F.3d at 895.  In ***United States v. Jackson***, ___F.3d___, 2006 WL 1211053, at *2 (8th Cir. May 08, 2006), the Eighth Circuit stated:

> The Supreme Court has recognized that "the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure that an indictment is well founded." ***United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850)***, 461 U.S. 555, 563 (1983).

The statute of limitations for financial institution offenses was increased by Congress from five years to ten years in 1989.  **See** 18 U.S.C. § 3293.  The increase resulted from a plethora of bank fraud scandals in the late 1980s and a need to allow prosecutors time to investigate and amass the documents needed for prosecution.  **See *United States v. Gross***, 165 F. Supp. 2d 372, 377 n.4 (E.D.N.Y. 2001) (**citing** H.R. Rep. No. 101-54(I) at 464-65 (1989) reprinted in 1989 U.S.C.C.A.N. 86, 260-61)).  Kooistra has shown neither bad faith nor specific prejudice requiring any relief other than a reliance upon the statute of limitations.  Accordingly, Kooistra's motion to dismiss is without merit.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that**:

Defendant Wayne Evan Kooistra's motion to dismiss (Filing No. 35) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 24th day of May, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge